```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT CHARLESTON


JON DEAN
individually and as administrator
of the estate of
TABATHA NICOLE DEAN
deceased,

         Plaintiff,

v.
                                    Civil Action No.: 15-11379
ZURICH AMERICAN INSURANCE
COMPANY and
ZURICH N.A. INSURANCE COMPANY,

         Defendants.
```

## MEMORANDUM OPINION AND ORDER

Pending is the motion for summary judgment filed by defendants Zurich American Insurance Company and Zurich N.A. Insurance Company on October 19, 2015 (ECF No. 14).[1]

---

[1] Defendant Zurich N.A. Insurance Company joins the pending motion for summary judgment only on the signature line. No arguments are presented specifically distinguishing Zurich N.A. Insurance Company's involvement from Zurich American Insurance Company's involvement. The complaint alleges that Zurich N.A. Insurance Company made the decision to deny benefits under the decedent's policy, which Zurich American Insurance Company issued. Compl. ¶ 3. Defendants' answer states that Zurich N.A. is not a proper party to this suit because it is a "trade style" and not a legal entity. Answer ¶ 2. Because the decision to deny benefits is the crux of the pending motion, the court will treat the motion as a petition for summary judgment by both defendants.

I.   Factual and Procedural Background

Plaintiff's spouse, Tabitha Nicole Dean, was found deceased in her home on July 14, 2011.  The chief medical examiner of West Virginia's report stated that Ms. Dean died as a result of "[o]verused prescribed promethazine together with overingestion of alcoholic beverages in the setting of prescribed methadone treatment."  Administrative Record 293 (hereinafter "AR").  The autopsy classified her death as an accident.  Additionally, Ms. Dean's attending physician, Dr. Dorai T. Rajan, found as follows:

> The toxicology report reveals that the level of Promethazine [in Ms. Dean's blood] is well above the toxic level, the level of Ethanol is above the legal limit with the use of Methadone, Acetaminophen and Topiramate.  I would be inclined to agree, with all reasonable degree of medical certainty that the cause of death in the case of Ms. Tabatha Dean is Drug Overdose with the manner of death being accidental.  Ms. Dean clearly had a history of addiction and overuse of prescription drugs, recreational drugs as well as alcohol.

AR 83.

Ms. Dean was insured as an employee under YRC Worldwide, Inc.'s employee benefit plan, a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  Plaintiff claimed Accidental Death Benefits under Policy No. GTU 0030578 (the "Policy"), issued by Zurich American Insurance

2

Company.  The Policy invests the administrator with "discretionary authority" over the eligibility decision.  AR 55.

The Accidental Death Benefit coverage, set out in Section V ("Benefits") of the Policy, provides that "[i]f a Covered Person suffers a loss of life as a result of a Covered Injury, We will pay the applicable Principal Sum."  AR 44.  The key term is that of a "Covered Injury," which is defined as follows:

- Covered Injury means an Injury directly caused by accidental means which is independent of all other causes, results from a Covered Accident, occurs while the Covered Person is insured under this Policy, and results in a Covered Loss.

AR 40.  An "Injury" is simply defined as "a bodily Injury," and two additional defined terms are important in the above definition.  First, "Covered Accident" is defined as an "Accident that results in a Covered Loss."  An "Accident" is defined as follows:

- Accident or Accidental means a sudden, unexpected, specific and abrupt event that occurs by chance at an identifiable time and place during the Policy term.

AR 40.  Second, the term "Covered Loss" is central.  It has the following definition, subject to the exceptions set out in Section VII of the Policy:

3

- Covered Loss means a loss which meets the requisites of one or more benefits or additional benefits, results from a Covered Injury, and for which benefits are payable under this Policy.

AR 40.

However, Section VII ("General Exclusions") specifically excludes certain losses from the definition of "Covered Loss." The Section states that "[a] loss will not be a Covered Loss if it is caused by, contributed to, or results from" any of nine events. The pertinent events in this case are as follows:

1. suicide or any attempt at suicide or intentionally self-inflicted Injury or any attempt at intentionally self-inflicted Injury;

. . . .

8. being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage.

AR 53.

On July 11, 2014, defendants denied plaintiff's claim on the basis that Ms. Dean's death was excluded under the provisions just cited. Plaintiff appealed this decision to defendants' ERISA Committee (the "Committee") on August 11, 2014, and the Committee affirmed the denial of benefits on

4

October 10, 2014, because Ms. Dean died as a result of a combined overdose of prescribed drugs and overingestion of alcohol.

Plaintiff filed this case in West Virginia state court on July 16, 2015, appealing the decision of the Committee. Plaintiff asserted that defendants' decision to deny benefits was "wrong, malicious, arbitrary and capricious." Compl. ¶ 7. Plaintiff also alleged that defendants breached certain duties under W. Va. Code § 33-11-4(9) and that defendants' denial of benefits exhibited common law bad faith. On July 21, 2015, defendants removed this case to federal court on the basis of federal subject matter jurisdiction.

Defendants argue that the Committee's denial decision was reasonable and well-supported in view of the deferential standard applicable here. Defendants also aptly contend that plaintiff's state law claims are preempted by ERISA. Plaintiff responds that the Committee relied on certain deficient doctors' reports and that defendants have a conflict of interest in administrating their own ERISA claims, and therefore that the Committee's decision was unreasonable.

## II. Discussion

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (same). A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

At bottom, a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

"When . . . an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility

determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629–30 (4th Cir. 2010) (upholding district court's decision that the administrator of an employee benefit plan abused its discretion when it terminated plaintiff's long-term disability benefits). "Under this standard, [a court] should affirm a discretionary decision of a plan administrator if it is the result of a 'deliberate, principled reasoning process' and is supported by 'substantial evidence,' even if [it] would reach a different decision independently." Helton v. AT & T Inc., 709 F.3d 343, 351 (4th Cir. 2013) (quoting Williams, 609 F.3d at 630). "A paramount principle of contract law requires us to enforce the terms of an ERISA insurance plan according to 'the plan's plain language in its ordinary sense,' . . ." Johnson v. American United Life Ins. Co., 716 F.3d 813, 819-20 (4th Cir. 2013) (quoting Wheeler v. Dynamic Eng'g, Inc., 62 F.3d 634, 638 (4th Cir. 1995)).

In Metropolitan Life Insurance Co. v. Glenn, the Supreme Court clarified that the presence of a plan administrator's conflict of interest does not alter the abuse-of-discretion standard of review for benefits decisions. 554 U.S. 105, 115 (2008).

7

> Instead, the Court explained, the presence of such a conflict is "but one factor among many that a reviewing judge must take into account." . . . In particular, the Supreme Court counseled that the conflict of interest should not itself lead to "special burden-of-proof rules, or other special procedural or evidentiary rules."

Williams, 609 F.3d at 630–31 (citation omitted) (quoting Glenn, 554 U.S. at 116).

Other factors shepherd the review of administrative reasonableness in the Fourth Circuit. In Williams, the court enumerated "eight nonexclusive factors" that are relevant to review of ERISA decisions:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

609 F.3d at 630. Glenn makes clear that the final factor in this litany is to be given no special primacy where a conflict of interest exists.

Plaintiff argues that a conflict of interest exists because defendants are both arbiter and payor of a beneficiary's

8

claims. While plaintiff is correct that an ostensible conflict exists, plaintiff has not argued that defendants' conflict deserves any unusual or special scrutiny. The mere fact that an insurer both pays and evaluates claims is unremarkable. The key inquiry remains whether the Committee's decision was reasonable on balance. Helton, 709 F.3d at 351.

Plaintiff emphasizes in particular that the Committee's decision relied on two physicians' reports that were deficient. Plaintiff argues that the fact that these reports concur in the autopsy's characterization of Ms. Dean's death as "accidental," as well as the fact that they fail to identify her prescribed promethazine dosage, make the Committee's denial unreasonable. Of course, "the adequacy of the materials considered to make the decision" is one of the relevant factors discussed in Williams. 609 F.3d at 630. The Committee's decision relied in part on the medical report of Dr. Manion, an independent medical reviewer, and Dr. Rajan, Ms. Dean's treating physician. See Defs.' Reply 4. Dr. Manion explicitly stated that Ms. Dean

> had not been taking Promethazine in the prescribed
> dosage and this led to her having a very high level of
> the drug at a toxic range that combined with alcohol
> and methadone led to her death from combined drug
> intoxication. . . . I agree with Dr. Mock that the
> manner of death is "accident."

9

AR 91. Likewise, as earlier noted, Dr. Rajan observed that

> [t]he toxicology report reveals that the level of Promethazine is well above the toxic level, the level of Ethanol is above the legal limit with the use of Methadone, Acetaminophen and Topiramate. I would be inclined to agree, with all reasonable degree of medical certainty that the cause of death in the case of Ms. Tabatha Dean is Drug Overdose with the manner of death being accidental. Ms. Dean clearly had a history of addiction and overuse of prescription drugs, recreational drugs as well as alcohol.

AR 83. The Committee reiterated the doctors' findings as follows:

> The death certificate, autopsy report and toxicology reports indicate that the cause of death was a combined overdose of methadone, promethazine, topiramate and alcohol intoxication. The amendment to the Medical Examiner's Report states that Ms. Dean overused prescribed promethazine with over-ingestion of alcoholic beverages in the setting of prescribed methadone treatment.
>
> Our independent medical reviewer, Dr. William Manion, opined that Ms. Dean was not taking promethazine in the prescribed dosage and this led to her having a very high level of the drug at a toxic range and that, combined with the alcohol and methadone, led to her death of combined drug intoxication. The attending physician, Dr. Rojan [sic], agreed with Dr. Manion's findings, stating the level of ethanol was above the legal limit with the use of methadone, acetaminophen and topiramate. Dr. Rajan also indicated that Ms. Dean had a history of addiction and overuse of prescription drugs, recreational drugs as well as alcohol.

AR 2.

Although plaintiff is correct that neither doctor identified her prescribed dosage for promethazine, each doctor did identify overdose as the cause of death. As her treating physician, Dr. Rajan would have known her dosage firsthand, and he confirmed Dr. Manion's report. Furthermore, descriptions of the "manner of death" as "accidental" do not end the inquiry. While an intentional death would certainly disqualify a beneficiary under the Policy's suicide exclusion, there is a second exclusion relevant here, namely, the exclusion for drug overuse.

The Policy describes this exclusion as "being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage." AR 53. Courts have consistently upheld benefits denials on the basis of similar overdose language in ERISA contracts. See, e.g., Cogdill v. Am. Gen. Assur. Co., No. 3:08-03466-CMC, 2009 WL 3261556, at *4 (D.S.C. Oct. 8, 2009) (upholding ERISA benefits denial where decedent overused multiple prescription drugs on basis of policy exclusion language for drugs not taken "as prescribed by a doctor"), aff'd, 380 F. App'x 263 (4th Cir. 2010); Hummel v. Cont'l Cas. Ins. Co., 254 F. Supp. 2d 1183, 1185 (D. Nev. 2003)

11

(noting that "as prescribed by" language was clear and unobjectionable under ERISA); Dice v. Gen. Elec. Capital Assur. Co., 93 F. App'x 68, 70 (6th Cir. 2004) (unpublished decision) (upholding ERISA benefits denial on basis of policy exclusion language for drugs not taken "on the advice of a physician").

Such precedent affirms, and plaintiff does not dispute, that the Policy exclusion for instances in which drugs are not taken "in accordance with the prescribed dosage" complies with ERISA's requirements. Moreover, a death may be "accidental" – that is, not a suicide – while still resulting from drug overdose. A patient may ingest too much of a drug cocktail without also intending death. In such a situation, an "accidental" death may be excluded from coverage under the Policy.

The evidence supports the Committee's conclusion that just such an exclusion applied to Ms. Dean's death. Like the doctors' reports, the autopsy report identified the cause of death as drug overdose, together with overingestion of alcohol. AR 293. The Committee reviewed numerous additional reports and documents in support of its finding. AR 26-29. Furthermore, several of the Williams factors align in favor of the Committee's finding. The language of the plan is unambiguous that a death that results from or coincides with overdose is

excluded from coverage, and the Committee's interpretation was consistent with other provisions in the Policy. See Defs.' Mem. in Supp. of Summ. J. 3.

Finally, the complaint also alleges that defendants breached several legal duties under common law and W. Va. Code § 33-11-4(9), which include failing to adopt reasonable standards for the investigation of claims, failing to attempt a fair and reasonable settlement of plaintiff's claim, and compelling plaintiff to institute litigation to recover amounts owed. Defendants argue that ERISA preempts the application of these state law duties to Ms. Dean's employee benefit plan. See Defs.' Mem. in Supp. of Summ. J. 9-11. Plaintiff has failed to raise a genuine issue regarding whether the Policy is governed by ERISA, and defendants are in fact correct that ERISA supersedes state law governing employee benefits plans, save for limited exceptions not relevant here. See 29 U.S.C. § 1144(a) (ERISA preemption clause) ("[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."). "Congress clearly intended to occupy the field and to exclude from the field any effort by the states to regulate ERISA matters." Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 418 (4th Cir. 1993); Prince v. Sears Holdings

Corp., __ F.3d __, __, No. 16-1075, 2017 WL 383370, at *3 (4th Cir. Jan. 27, 2017) (noting that challenges to plan administration are "core" ERISA claims for which state law is preempted).

In Custer, the court found that ERISA governs an employee insurance claim against an insurer and preempts W. Va. Code § 33-11-4(9), the exact statute at issue here, as well as common law with respect to that plan. 12 F.3d at 419-20. Inasmuch as Ms. Dean's employee benefit plan falls squarely within the ambit of ERISA, plaintiff's state law claims must fail.

Consequently, in light of the Committee's well-reasoned and principled decision, AR 1-3, and this court's deferential standard of review, no genuine issue of material fact remains, and the Committee's decision must be upheld.

### III. Conclusion

For the foregoing reasons, it is ORDERED that defendants' motion for summary judgment be, and it hereby is, granted.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: March 3, 2017

John T. Copenhaver, Jr.
United States District Judge